## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-00416-COA

ARTHUR WILDE                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                            APPELLEE

DATE OF JUDGMENT:            02/08/2019
TRIAL JUDGE:                 HON. M. JAMES CHANEY JR.
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ARTHUR WILDE (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: DARRELL CLAYTON BAUGHN
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                 AFFIRMED - 04/14/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE CARLTON, P.J., TINDELL, McDONALD AND McCARTY, JJ.

## McCARTY, J., FOR THE COURT:

¶1.     Arthur Wilde challenges the denial of parole in this appeal after the trial court denied

his requested relief.  Because the decision to grant or deny parole is within the exclusive

authority of the Mississippi Parole Board and because Wilde has not established a claim that

the Board's treatment violated his right to equal protection, we affirm.

## BACKGROUND

¶2.     In 1981, Wilde "pled guilty and was convicted of one count of murder and two counts

of aggravated assault" and "was sentenced to life imprisonment in the custody of the

Mississippi Department of Corrections [(MDOC)]."  *Wildee v. State*, 930 So. 2d 478, 479

(¶2) (Miss. Ct. App. 2006).[1] He made attempts to attack that plea via filings for post-conviction relief (PCR) in 1986, 1987, 1988, 1997, and 2005. *Id*. In the last of those cases, we rejected the PCR as successive-writ barred. *Id*.

¶3. Afterward, Wilde shifted from attacking his conviction to seeking parole. A request for parole was denied, after which he sought "a motion for injunctive relief" by alleging "that the Mississippi Parole Board's denial of his parole was racially motivated and biased." *Wilde v. Miss. Parole Bd.*, 144 So. 3d 175, 175 (¶2) (Miss. Ct. App. 2013). "Further, he claimed that the Parole Board discriminates against black inmates and gives them a longer set-off than white inmates convicted of similar crimes." *Id*.

¶4. The trial court denied relief. *Id.* We affirmed, finding that parole was within the jurisdiction of the Parole Board and that circuit courts generally do not have the authority to determine parole eligibility. *Id*. at 176 (¶4). We also found that Wilde had "fail[ed] to show evidence that establishes a clear violation of his equal-protection rights." *Id*. at 177 (¶8).

¶5. Wilde then sought "to be declared eligible for parole" by the federal court system. *See Wilde v. Miss. Parole Bd. Members*, No. 3:16-cv-00408-TSL-MTP, 2016 WL 6495918, at *1 (S.D. Miss. Oct. 14, 2016). Per precedent, the magistrate judge concluded that "[p]arole decisions are solely within the discretion of the parole board," and in Mississippi there is no liberty interest in parole. *Id.* at *2. As a result, because the inmate "has no constitutional right to parole, he can have no constitutionally protected right to a parole eligibility date."

---

[1] Mr. Wilde's last name has been spelled variously Wildee and Wilde in his petitions. This case carries the spelling of Wilde, as do his current MDOC records, and we will use that version.

*Id*. The district judge adopted the magistrate judge's report and recommendation, with some modifications, and dismissed the case. *Wilde v. Miss. Parole Bd. Members*, No. 3:16-cv-00408-TSL-MTP, 2016 WL 6465471, at *1 (S.D. Miss. Oct. 31, 2016).

¶6. Wilde was up for parole again in 2018. He showed he was free of a rule violation report (RVR) for two years (2007-2008 and 2009-2010), he had received his high school equivalency diploma in 2008, and he had completed 1,550 hours of welding training; 1,779 hours of carpentry training; and 1,450 hours of instruction in industrial electricity.

¶7. Nonetheless, the Board denied his request for parole. The denial listed four reasons for denial: (1) the serious nature of the offenses under which Wilde was convicted; (2) opposition in the community to his release; (3) the Board's concern that he did not have "the social, mental, or educational resources" to "function successfully on parole"; and (4) "[t]he Board believes the ability or willingness to fulfill the obligations of a law-abiding citizen is lacking." The Board further checked a box under "Special Instructions to Offender," indicating that he should appear "before the Board with NO RVRS." By this action, Wilde would next be eligible for parole five years later, in 2023.

¶8. After the denial of parole, Wilde filed a handwritten request in the Warren County Circuit Court. The caption was styled *Wilde v. Mississippi Parole Board*, and the request was titled "Notice of Motion for an Order to Show Cause for Habeas Relief." It was accompanied by a fuller request titled "Petition for an Order to Show Cause." The pleading stated that "Petitioner is not attacking the legality of his sentence."

¶9. Instead, Wilde argued that the Parole Board's decision to deny him parole was

3

"racially motivated," alleging that "black men and black women must serve[] longer periods of confinement" than white inmates and that the Parole Board's actions were "solely based upon one race rather than the crimes committed in this State." In this way the request echoed his earlier case but contained more examples of white inmates who had been released.

¶10. The trial court denied the motion, finding "that the petition is successive, time barred, and frivolous," and was further "barred by doctrine of res judicata," citing our 2013 decision. Wilde timely appealed from the trial court's decision.

## DISCUSSION

¶11. Wilde essentially seeks for the Judiciary to force the Parole Board to grant him parole. "Yet it is the Parole Board, not the courts, that has exclusive authority over the grant or denial of parole." *Smith v. State*, No. 2018-CP-00814-COA, 2019 WL 3297052, at *1 (¶6) (Miss. Ct. App. July 23, 2019), *cert denied*, 289 So. 3d 310 (Miss. 2020). "Our Legislature has vested the determination of the grant of parole with the Parole Board." *Id*. "An offender shall be placed on parole only when . . . the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen." Miss. Code Ann. § 47-7-17 (Rev. 2015). This law required the trial court to deny Wilde's request since in Mississippi "an inmate is not guaranteed parole, even when eligible." *Smith*, 2019 WL 3297052, at *2 (¶9).

¶12. Wilde's alternative argument is a more fleshed out version of the same argument he made before this Court in 2013—that the Parole Board treats inmates differently based upon race. We previously rejected the earlier incarnation of his argument, finding he failed to show a clear violation of his rights to equal protection. *Wilde*, 144 So. 3d at 177 (¶9).

4

¶13. Our precedent declares that "inmates are protected against racial-discrimination by the Equal Protection Clause of the Fourteenth Amendment." *Mangum v. Miss. Parole Bd.*, 76 So. 3d 762, 770 (¶21) (Miss. Ct. App. 2011). "Further, the core purpose of the Equal Protection Clause is the prevention of official conduct discriminating on the basis of race." *Id*.; *see Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985) (explaining that "equal protection may be violated" in situations where "without adequate justification, [a prisoner] was treated unfairly compared to other prisoners who were similarly situated"). To maintain a claim for equal protection, one must show "proof of a racially discriminatory purpose[.]" *Mangum*, 76 So. 3d at 767 (¶11). "However, proof rarely consists of direct evidence," as "evidence is usually circumstantial." *Id*.

¶14. In *Mangum*, we examined the petition of an inmate who "provided specific examples of unequal treatment," including "citing a specific example of another similarly situated white inmate who was granted parole." *Id.* at 770 (¶22). The white inmate had allegedly received parole even though he "was convicted of a more serious crime," "had extensive community opposition to his release on parole," had served less time than Mangum, and "unlike the white inmate, Mangum had numerous favorable recommendations from high-ranking prison officials." *Id*. at 768 (¶14). In accord with precedent, we found "that it is not beyond doubt that Mangum could not prove his allegations of racial-discrimination," and so we reversed for an evidentiary hearing before the trial court. *Id*. at 770 (¶¶22, 24).

¶15. Wilde seeks similar relief, asking us to "remand this case to the active docket of [the circuit court] for a ruling on his Equal Protection Claim . . . ." In support, he lists several

white male and female inmates who he alleges "have served far less time than most blacks." He also lists other white inmates over a large span of time who he contends have served far less time than he.

¶16. However, the comparisons that Wilde seeks to make are not as close as the one made by the inmate in *Mangum*. In that case, the inmate was able to closely tie his denial of parole to a contemporary grant of parole to another inmate. As the Fifth Circuit set out in *Hilliard*, a key component of these cases is whether a prisoner "was treated unfairly compared to other prisoners *who were similarly situated*." *Hilliard*, 759 F.2d at 1193 (emphasis added).

¶17. In this case, the Parole Board's decision to deny Wilde parole was based on four grounds. His pro se brief examines many of these grounds, such as opposition in the community to his release and whether he has sought an educational grounding so that he can flourish when returned to society. The distinction in this case is the Parole Board's concern that Wilde would not "fulfill the obligations of a law-abiding citizen." Implicit in this decision was that Wilde had a history of incurring RVRs. This even led the Parole Board to give him special instructions that he needed to seek parole in the future "with NO RVRS." While Wilde's argument focuses on the allegation that white inmates receive parole for the same crimes he committed, the underlying crime is only one component of what the Parole Board examines. Even by Wilde's own proof, he had only been free of rule violations for two years circa 2007 and 2009—neither of those was within the immediate time period when the Parole Board reviewed him for parole in 2018.

¶18. Wilde argues that he was parole-eligible in 1993 and that others were released in that

time period for similar crimes. Yet the only parole denial before us is the most recent one from 2018, which rested in part on the RVRs Wilde incurred while incarcerated. In contrast to *Mangum*, Wilde's suggested comparisons to other inmates do not provide enough proof to support his claim of racial discrimination. He has not shown that those inmates paroled were similarly situated in terms of their conduct within the prison system, nor has he shown that others similarly situated were granted parole while he was denied parole.

¶19. Pursuant to *Mangum*, we will remand for an evidentiary hearing when an inmate has shown proof of an equal-protection right violation. However, the proof in this case has not reached that point, so we affirm the trial court's decision that Wilde has failed to provide sufficient evidence of an equal-protection right violation.

¶20. Finally, Wilde asks that we examine whether the trial court was correct to classify his pleading as a PCR filing and as frivolous. While the trial court analyzed Wilde's case as one for post-conviction relief, the inmate was not seeking that type of relief: the case was captioned by him as *Wilde v. Mississippi Parole Board*; he specifically set out how he was not attacking his conviction in the pleading; and he plainly asked for parole, not relief from his conviction. Such a pleading "is best viewed as a regular civil action against the Parole Board, not a motion for post-conviction relief." *Fluker v. State*, 200 So. 3d 1148, 1149 (¶3) (Miss. Ct. App. 2016); *Ducksworth v. State*, 174 So. 3d 323, 324 (¶5) (Miss. Ct. App. 2015) (A trial court is "in error pursuant to this Court's decisions" to treat a request for parole or parole eligibility as a PCR filing.).

¶21. The trial court found in the alternative that Wilde was barred from seeking relief due

to res judicata from his 2013 appeal to this Court. "In applying the doctrine of res judicata, there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Estate of Oliver v. Oliver*, No. 2016-CP-01757-COA, 2019 WL 1615046, at *10 (¶45) (Miss. Ct. App. Apr. 16, 2019) (quoting *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (¶10) (Miss. 2009)), *cert. denied*, 287 So. 3d 218 (Miss. 2020). To establish the identity of the cause of action, we look to "the underlying facts and circumstances upon which a claim has been brought." *Id*. at (¶47).

¶22. Wilde's 2013 appeal was based on a 2011 suit regarding equal protection after a denial of parole. The underlying suit in this appeal was filed in 2018, based upon a 2018 denial of parole by the Parole Board. Because of the length of time Wilde has now served, nearing thirty-nine years, the comparison basis for parolees has necessarily changed as well. While some of the elements of res judicata may be present, because the underlying facts and circumstances are different from the 2013 appeal, the trial court should not have dismissed the suit as barred by res judicata. While unsuccessful, Wilde also supported his arguments with citations to law and examples of other inmates who were granted and denied parole, and as a result his case was not frivolous.

¶23. This does not change our conclusion that the trial court's decision will be affirmed. Just as in *Smith*, "we have the authority to affirm a trial-level court when it reaches the correct result, even when that court's reasoning was incorrect." *Smith*, 2019 WL 3297052,

8

at *3 (¶10).[2] The Parole Board has exclusive authority to grant or deny parole to Wilde, and at this point he has not shown that the decision to deny him parole was due to an equal-protection right violation. Therefore, we affirm the trial court's ruling.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND C. WILSON, JJ., CONCUR. TINDELL AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[2] For the same reason, the State's alternative point regarding venue does not impact our decision. The State argued that venue was improper in Warren County and that because the Mississippi State Penitentiary is a State agency, his case should have been filed in the seat of State government, Hinds County. As we have previously ruled in a similar case, "[s]ince we can easily affirm the dismissal of [the] petition on the merits, there is no reason to address the issue of venue." *Fluker*, 200 So. 3d at 1149 (¶3).